# Exhibit A

1   John Mayfield Rushing (SBN # 331273)
2   Ryan McCarl (SBN # 302206)
    Davit Avagyan (SBN # 336350)
3   Elisabeth Nations (SBN # 352493)
4   **Rushing McCarl LLP**
    2219 Main St. No. 144
5   Santa Monica, CA 90405
6   T: (310) 896-5082
    E: info@rushingmccarl.com
7
    *Attorneys for Plaintiffs*
8

Electronically FILED by
Superior Court of California,
County of Los Angeles
2/01/2024 2:50 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Covarrubias, Deputy Clerk

9           SUPERIOR COURT OF THE STATE OF CALIFORNIA
10                    COUNTY OF LOS ANGELES

11
    MACKENZIE BROWN,                    Case No. _24STCV02653_
12  individually and on behalf of all
    others similarly situated;
13  MEILING ROBINSON,
14  individually and on behalf of all   **CLASS ACTION**
    others similarly situated; SHEA
15  RITCHIE, individually and on        Complaint for:
16  behalf of all others similarly
    situated; and NORA McCARL,             1. Unfair Business Practices (Violation
17  individually and on behalf of all         of Bus. & Prof. Code § 17500 et seq.)
18  others similarly situated,             2. Fraud
                                           3. Violation of Bus. & Prof. Code
19                         *Plaintiffs,*      § 17200 et seq.
                                           4. Unjust enrichment
20  v.
21
    PACIFIC MARKET                       **JURY TRIAL DEMANDED**
22  INTERNATIONAL, LLC, a
23  corporation, and DOES 1 through
    100,
24
25                        *Defendants*
26
27
28

**Ex. A**
p. 9

1

2   Plaintiffs allege — with personal knowledge as to their own actions and upon

3   information and belief as to the actions of others — as follows:

4

5   **INTRODUCTION**

6   1.      This case arises from PMI Pacific Market International, LLC ("PMI")'s

7           admission in January 2024 that its popular Stanley cups contain lead.[1]

8           PMI had previously failed to disclose that information — presumably

9           because doing so would have hurt PMI's bottom line. After all, PMI's

10          primary target market is young professional women of childbearing

11          age, such as the four named plaintiffs bringing this Complaint. PMI

12          spends enormous sums to reach this market by paying influencers to

13          advertise Stanley cups as safe, durable products.

14

15  2.      PMI has marketed its products to the public for years as a safe, practical

16          item especially suitable for young women. But PMI did not disclose its

17          use of lead in manufacturing until January 2024. Rather, it advertises its

18          cups as being "BPA-free" and made of stainless steel while omitting

19          another key ingredient used in its vacuum seal: lead.

20  3.      Lead— especially when touched, swallowed, or inhaled — can cause

21          severe developmental problems in children that lead to lifelong negative

22

23  _____

24  [1]     See Daryl Austin, *Do Stanley cups contain lead or pose a risk of lead poisoning? Experts
            weigh in*, Today (Jan. 24, 2024), https://www.today.com/health/news/stanley-cups-
25          lead-rcna135513 ("Stanley is responding to claims that its products contain lead,
            clarifying that yes, lead is used in the manufacturing process, but the product needs
26          to become damaged in order to expose the lead, a Stanley spokesperson tells
            TODAY.com in a statement."); *Do Stanley products contain lead?* Stanley 1913,
27          https://support.stanley1913.com/en/support/solutions/articles/69000850923-do-
            stanley-products-contain-lead-.
28

2

health effects.[2] These effects can include reproductive toxicity, cardiovascular disease, and nervous system damage.[3]

4.    Lead is dangerous even in trace amounts. Despite PMI's assurances that its cups are safe, guidelines issued by the Centers for Disease Control and Prevention state that there is no safe level of lead for children.[4] Even very low levels of lead can be toxic over time.[5]

5.    Plaintiffs bring this action on behalf of themselves and similarly situated consumers who purchased Stanley cups in California before Stanley admitted, on or about January 24, 2024,[6] that its cups contained lead.

6.    All named Plaintiffs, and all members of the putative class, share these characteristics:

- They bought Stanley cups that contained lead but provided no warnings or disclosures about lead.

- They were unaware that Stanley cups contained lead.

- They reasonably believed that Stanley cups were safe, durable, and suitable for household and outdoor use.

---

[2]    Health Effects of Lead Exposure, Center for Disease Control and Prevention (Sept. 2, 2022), https://www.cdc.gov/nceh/lead/prevention/health-effects.htm.

[3]    Lead poisoning, World Health Org., (Aug. 11, 2023), https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health.

[4]    Lead Poisoning Prevention, Centers for Disease Control and Prevention, (Sept. 2, 2022), https://www.cdc.gov/nceh/lead/prevention/default.htm.

[5]    Madeline Holocombe & Sandy LaMotte, *Stanley and other drink cups contain lead. Should you be worried?*, CNN (Jan. 26, 2024).

[6]    *See supra* n.1.

- They would not have bought the cups if PMI had disclosed the fact that the cups contained lead.

7.  PMI marketed its products as safe for use by adults and children despite knowing they contain a toxic material that, if the cup were damaged, could expose consumers (including children) to lead. It thus knowingly misled Californians by failing to disclose a fact that reasonable consumers — especially those in PMI's safety-conscious target demographics — would want to know before buying a drinking cup, especially considering that similar products are available that do not use lead or pose any lead-related risks.

8.  When PMI admitted, in January 2024, that reports of Stanley cups containing lead were true, it offered the following explanation. The explanation shows that PMI deliberately used lead in its cups' vacuum seals while knowing that the cups could be damaged even through ordinary use, potentially exposing consumers and their families to lead:

> Once sealed, this area is covered with a durable stainless steel layer, making it inaccessible to consumers. Rest assured that no lead is present on the surface of any Stanley product that comes into contact with the consumer nor the contents of the product. In the rare occurrence the base cap of a product comes off due to ordinary use and exposes this seal, it is eligible for our Lifetime Warranty ….[7]

---

[7]  *See supra* note 1; https://support.stanley1913.com/en/support/solutions/articles/69000850923-do-stanley-products-contain-lead-.

*Putative Class Action Complaint*

9.    PMI had a duty to disclose its use of lead before enticing millions of customers to unwittingly buy its drinkware. Instead of allowing consumers to decide for themselves and their families whether to accept any risks associated with using a lead-containing drinking cup, PMI kept customers in the dark so as not to interfere with its bonanza of influencer-driven sales, especially sales to young women.

10.   Plaintiffs request a permanent injunction requiring PMI to disclose any lead or other toxins in its products in California; compensatory damages refunding them for all amounts paid for affected Stanley products; punitive damages for PMI's deliberate concealment of its use of lead and of the possibility that damage to a cup could expose consumers to lead; prejudgment interest; attorney fees and costs; and any other relief allowed by law.

### PARTIES, JURISDICTION, AND VENUE

11.   Named plaintiffs Mackenzie Brown, Meiling Robinson, Shea Ritchie, and Nora McCarl are California consumers who bought one or more Stanley-branded cups manufactured by Defendant. Plaintiffs Mackenzie Brown, Meiling Robinson, and Nora McCarl live in Los Angeles and bought one or more Stanley-branded cups in Los Angeles, while Shea Ritchie lives in San Francisco and bought one or more Stanley-branded cups in San Francisco.

12.   The putative class members are California consumers who bought a Stanley-branded cup manufactured by PMI that contains lead at any time before PMI's disclosure that its product contains lead.

*Putative Class Action Complaint*

13.     Defendant PMI Pacific Market International, LLC is a Washington limited liability company with its principal place of business at 2401 Elliot Ave. Fl. 4 in Seattle, Washington. PMI advertises and sells its products throughout California, both directly to consumers and through intermediaries. PMI intended to, and did, substantially affect business and commerce within California.

14.     Plaintiffs do not know the names of Defendants Does 1–100 and sues them by fictitious names under Civ. Proc. Code § 474.

15.     Upon information and belief, each defendant is responsible in some way for the acts alleged in this Complaint and each proximately caused Plaintiffs' damages. Each was acting as an agent for the others within the scope of that agency and with the others' authorization, participation, or approval.

16.     Venue is proper in this Court because PMI conducts substantial business in California; advertised the product to Plaintiffs in Los Angeles, California; and enticed Plaintiffs and putative class members to buy PMI's product in Los Angeles.[8]

### COMMON ALLEGATIONS

17.     In 2019, PMI launched a new marketing campaign to increase sales of its Adventure Quencher Travel Tumbler. Aided by social media influencers cultivated by PMI because of their ability to reach PMI's core market of young women, the product's sales skyrocketed. The Stanley brand went from $70 million in annual sales in previous years to over $750 million

---

[8]   One named plaintiff, Shea Ritchie, resides in San Francisco, California.

in 2023.[9] The tumbler has "become the model of choice among a lot of millennial and Gen Z women, many of whom are mothers."[10]

18.     PMI also advertised its cups for adventurers and for consumers who enjoy an active lifestyle. Though such use increases the chance of damage and lead exposure, consumers were never told that the product contains lead.

19.     With the popularity of the Adventure Quencher came the launch and subsequent popularity of other Stanley cups designed with similar sleek aesthetics and utilizing the same insulation system.

20.     In January 2024, several viral social media posts broke the news that Stanley cups contain lead.[11] PMI then admitted that the reports were true.[12]

21.     PMI admitted on its website that its popular Stanley-branded cups use lead to "seal the vacuum installation at the base" of the cups.[13] This seal is then covered with a layer of steel, which PMI admits may come off "due to ordinary use" and expose the seal containing the lead.[14]

---

[9]     Nicolas Vega & Lauren Shamo, *How a 40-ounce cup turned Stanley into a $750 million a year business*, CNBC Make It (Dec. 23, 2023).

[10]    Danya Issawi, *The Sisterhood of the Stanley Tumbler*, N.Y. Times (May 17, 2022).

[11]    Holocombe & LaMotte, *supra* note 5.

[12]    Do Stanley products contain lead? Stanley 1913, https://support.stanley1913.com/en/support/solutions/articles/69000850923-do-stanley-products-contain-lead- (last visited Feb. 1, 2024).

[13]    *Id.*

[14]    *Id.*

22.   Several experts have voiced their opinions that the lead content in Stanley cups is concerning. "[I]f that bottom seal comes off, all bets are off. . . . Lead is so toxic you just can't take chances with it," one research director stated.[15] A "broken seal may not always be obvious,"[16] and a child who fidgets with that broken bottle faces "a very possible and likely transference of microparticulate lead via normal hand-to-mouth behavior in young children."[17]

23.   Stanley cups do not include a Proposition 65 warning about toxic chemicals, despite PMI's insistence that it complies with Proposition 65.[18] This Complaint does not allege a violation of Proposition 65. But Proposition 65 is relevant to the extent it provides guidance as to a reasonable consumer's purchasing decisions in California.[19]

24.   PMI has claimed (citing no evidence) that using lead to seal insulation is the "industry standard."[20] But other manufacturers use alternative sealing processes that do not require including lead or other toxins in a

---

[15]   Holocombe & LaMotte, *supra* note 5 (quoting Jane Houlihan).

[16]   Julia Ries, *Stanley Tumblers Contain Lead – And So Do Other Reusable Cups. Here's the Truth About Their Safety*, HuffPost (Jan. 20, 2024) (quoting Maryann Amirshahi, co-medical director of the National Capital Poison Center), https://www.huffpost.com/entry/stanley-reusable-water-cup-lead_l_65b925abe4b01c5c3a383bfb.

[17]   Daryl Austin, *Do Stanley cups contain lead or pose a risk of lead poisoning? Experts weigh in*, TODAY (Jan. 24, 2024), https://www.today.com/health/news/stanley-cups-lead-rcna135513.

[18]   *I have a question about Stanley products*, Stanley 1913, support.stanley1913.com/en/support/solutions/articles/69000717809-i-have-a-question-about-stanley-products- (last visited Feb. 1, 2024).

[19]   *See e.g., Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 794 (N.D. Cal. 2015).

[20]   *Do Stanley products contain lead?*, *supra* note 13.

*Putative Class Action Complaint*

1   drinking cup.[21] Consumers had a right to make an informed decision

2   between a Stanley cup or a lead-free alternative — not be misled into

3   believing that Stanley cups were free of harmful materials.

4

5   25.   By selectively disclosing the materials it used through advertising such

6   as "recycled stainless steel" and "BPA free," PMI misled consumers into

7   believing PMI had disclosed all materials the product contained. But

8   had PMI advertised that its Stanley tumblers were made of "stainless

9   steel *and lead*," profits would undoubtedly have suffered.

10  26.   PMI has advertised its product for rugged outdoor adventures,

11  including by using the term "Adventure" in several of its products (such

12  as its famous "Adventure Quenture"). Yet PMI knew that the seal could

13  be exposed if the product was damaged from falls, hits, and other

14  damage, such as during outdoor activities such as hiking, running, and

15  similar activities.

16

17

18

19

20

21

22

23

24

25  _____

26  [21]  PMI's competitor Hydro Flask, for example, has been using a lead-free sealing

27  process more than a decade ago. *Does Hydro Flask use lead for sealing its bottles and tumblers?* Hydro Flask (Jan. 29, 2024), https://faq.hydroflask.com/en_us/does-hydro-

28  flask-use-lead-for-sealing-bottles-and-tumblers-HkQrgJLq6.

9

27.    PMI markets its products as safe, fashionable choices for conscientious consumers, especially those leading young families. PMI's advertisements feature cups in various colors popular with women. Its ads often show the cups being used by young women exercising or interacting with children.[22] One PMI advertisement on YouTube shows a child drinking from a Stanley cup alongside her mother.[23]



**The Stanley Adventure Quencher: Now in 4 sizes**

⋮

98K views • 1 year ago

*Fig. 1. A thumbnail for a PMI advertisement showing a child drinking from a Stanley cup while her mother watches happily.*

28.    Some Stanley products are marketed specifically for children. PMI describes the Wild Imagination IceFlow Flip Straw Tumbler as "easy to carry from the playground to the classroom."[24] On the Stanley website, another water bottle's description begins: "Keeping your child hydrated

---

[22]   Stanley Brand, *The Stanley Adventure Quencher: Now in 4 sizes*, YouTube (Mar. 22, 2022), https://youtu.be/4Uhg07tdvlg?si=JUOML5fZ-b9LZO8x.

[23]   *Id.*

[24]   *The Wild Imagination Iceflow Flip Straw Tumbler | 20 oz*, Stanley 1913, https://www.stanley1913.com/products/go-iceflow%E2%84%A2-flip-straw-tumbler-20-oz-wild-imaginations (last visited Feb. 1, 2024).

*Putative Class Action Complaint*

1    is critical for their health."[25] The brand highlights multiple images of

2    families holding Stanley cups on their social media pages.[26]

3  29.    A large part of PMI's marketing campaign has included paying

4    influencers with large followings in PMI's target demographics to

5    promote using the Stanley cup while breastfeeding. Paid influencers





*Fig. 2. A young mother promotes using a Stanley cup while breastfeeding in an advertisement paid for by PMI. The paid partnership video is still available on Instagram and can be watched by scanning the QR Code as of the date of filing.*

---

[25]  *Id.*

[26]  *See* @stanley_brand, INSTAGRAM, https://www.instagram.com/stanley_brand/ (last visited Feb. 1, 2024).

1    have touted Stanley products as "must-haves" for breastfeeding
2    mothers.[27]

3
4    30.   PMI has also spent years campaigning for its products to be perceived
5          as healthy, safe, and trendy drinkware for adventurers. Its
6          advertisements focus on healthy young people using Stanley products
7          while exercising, camping, and playing. Yet all along, PMI knew its
8          products were manufactured using a toxic compound and failed to
9          notify consumers of this fact or the fact that, if damaged, Stanley
10         products could expose consumers to toxic lead.

11   31.   Plaintiff Mackenzie Brown is an attorney who purchased a popular
12         rose-gold Stanley tumbler cup after being bombarded with advertising.
13         Brown is the mother of three young children who often carried her cup
14         to Little League games and other events. She bought the cup at Dick's
15         Sporting Goods as a treat to herself for Mother's Day. It was never
16         disclosed to Brown that the cup contained lead, and if she had been told
17         that fact, she would not have bought the product or introduced it into
18         her home.

19   32.   Plaintiff Meiling Robinson bought PMI's product after it was advertised
20         to her for adventurers. Robinson is a competitive sailor and regular
21         camper. Robinson used PMI's product while sailing in rough seas and
22         while camping, resulting in some damage to the cup. If Robinson had
23         known that the product contained lead, she would not have bought or

24

25   _____

26   [27]   *See, e.g.*, Fig. 2; Megan Call (@meganbcall), INSTAGRAM,
27   https://www.instagram.com/meganbcall/ (last visited Feb. 1, 2024).
28

used the product because of the heightened risk of lead exposure due to her use of the cup for its advertised "adventuring" purpose.

33.   Plaintiff Shea Ritchie is an avid runner who once carried a Stanley cup in a half marathon. She bought three Stanley cups for her close family and friends as gifts. Like the other plaintiffs, Ritchie made these purchases after seeing PMI's advertisements, none of which disclosed that its products contained lead. In fact, Ritchie had switched to using Stanley cups for peace of mind because she was concerned about toxins leaking into the water from the plastic drinkware she had used previously. Had she known that the Stanley cups contained lead, she would not have purchased them and would have looked for safe alternatives.

34.   Plaintiff Nora McCarl bought a Stanley cup just weeks after her young daughter was born as a way to hydrate more to facilitate breastfeeding. She routinely saw Stanley Cups promoted on Instagram as ideal for young mothers like her and had no reason to believe they might contain a hazardous toxin. McCarl was not warned at any point that the product contains lead and that it could expose her and her child to lead if the cup were damages. Had this information been disclosed, McCarl would not have bought PMI's product.

35.   Under the guise of encouraging young people to stay fit and hydrated, PMI engaged in misleading advertising that has potentially exposed individuals and young children to a hazardous material.

36.   Plaintiffs and the putative class members could have chosen to buy one of PMI's competitors as an alternative. Some of PMI's competitors have been using lead-free manufacturing for their drinkware for over a

*Putative Class Action Complaint*

1    decade.[28] But PMI kept the information about the presence of lead in

2    their products from the public, depriving the consumers from the

3    knowledge to make an informed decision about which product to buy.

4

5                          CLASS ACTION ALLEGATIONS

6    37.   Plaintiffs bring this action on their own behalf and on behalf of all

7          persons similarly situated. The putative class that Plaintiffs represent

8          consists of all California-based purchasers of Stanley cups. The persons

9          in the putative class are so numerous, consisting of hundreds of

10         thousands of individuals, that the joinder of all such persons is

11         impracticable and that the disposition of their claims in a class action

12         rather than in individual actions will benefit the parties and the court.

13

14   38.   There is a well-defined community of interest in the questions of law

15         and fact involved affecting the putative class in that PMI's false

16         advertising targeted all putative class members and all putative class

17         members bought the same product without knowledge that the product

18         contained lead. These questions of law and fact predominate over

19         questions that affect only individual putative class members. The claims

20         of Plaintiffs are typical of those of the putative class and Plaintiff will

21         fairly and adequately represent the interests of the putative class.

22   39.   Plaintiffs are informed and believe that each class member's

23         compensatory damages are low and easily established: they equal the

24         amounts expended on Stanley's drinking cups, which have usually sold

25

26   _____

27   [28]  *Does Hydro Flask use lead for sealing its bottles and tumblers?* Hydro Flask,
         https://faq.hydroflask.com/en_us/does-hydro-flask-use-lead-for-sealing-bottles-and-

28       tumblers-HkQrgJLq6 (last visited Feb. 1, 2024).

1    for between $20 and $60 per cup, with the most popular cups priced at

2    around $45 each. There is no adequate remedy for these consumers

3    other than through this class action because of the relatively small

4    damage suffered by each putative class member individually.

5

6    40.   The prosecution of individual remedies by members of the putative

7          class would tend to establish inconsistent standards of conduct for the

8          PMI and result in the impairment of class members' rights and the

9          disposition of their interests through actions to which they were not

10         parties.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CAUSES OF ACTION**

41.     All causes of action are alleged against all defendants.

**FIRST CAUSE OF ACTION: VIOLATION OF BUS. & PROF. CODE § 17500 ET SEQ.<br>(FALSE ADVERTISING LAW)**

42.     Each preceding paragraph is realleged and incorporated here by
reference.

43.     The allegations above describe many false advertisements that violate
California's False Advertising Law (Bus. & Prof. Code § 17500 et seq.).
That law prohibits intentionally or negligently making an untrue or
misleading statement about business services with the intent to induce
someone to enter into an obligation relating to those services.

44.     The law prohibits "not only advertising which is false, but also
advertising which, although true, is either actually misleading or which
has a capacity, likelihood or tendency to deceive or confuse the
public."[29] To state a claim under this law, it is necessary to show only
that an ordinary consumer and member of the public is likely to be
deceived.[30]

45.     PMI's false advertisements include, without limitation, falsely holding
out their products as risk-free for children, mothers, and other
consumers when PMI knew the products contained the toxic material
lead.

---

[29]  *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 225 (2013).

[30]  *Id.*

46.   As a result of PMI's actions, Plaintiffs paid money for unsafe products that may cause harm to them or their children. Plaintiffs seek restitution, compensatory damages, punitive damages, prejudgment interest, costs, and attorneys' fees. Plaintiffs also ask the Court to require PMI to disclose the use of lead in its products in all future sales.

## SECOND CAUSE OF ACTION: FRAUD

47.   Each preceding paragraph is realleged and incorporated here by reference.

48.   California recognizes three ways defendants can commit intentional fraud: intentional misrepresentation, concealment, and false promise. The first two are at issue here.

49.   PMI committed intentional fraud through statements (express and implied) made misleading because of PMI's deliberate nondisclosure of its use of lead in Stanley cups.[31] These statements included, for example, PMI advertisements targeting young parents and claiming Stanley cups were an essential resource for new mothers (when, in fact, the cups contained a substance that could cause permanent disabilities in young children), and PMI advertisements suggesting that Stanley cups were especially suited for rugged outdoor adventures (when, in fact, such adventuring created a heightened risk that the cups would be damaged, potentially exposing their owners to lead). PMI also made misrepresentations-through-nondisclosure by disclosing some facts about Stanley cups, such as that they are "BPA free" or made from recycled stainless steel, while not disclosing that the product also contains lead (a dangerous toxin).

50.   PMI also committed intentional fraud through its deliberate concealment of its use of lead in Stanley cups. Concealment occurs

---

[31] Fraudulent nondisclosure occurs when the defendant has a duty to disclose facts within its knowledge, but the defendant selectively discloses only certain facts, while intentionally failing to disclose other facts, making the partial disclosure deceptive. *Gutierrez v. Carmax Auto Superstores California*, 248 Cal. App. 5th 1234, 1253 (2018).

*Putative Class Action Complaint*

Ex. A
p. 26

1        when a defendant has a duty to disclose facts within its knowledge but

2        intentionally fails to do so.[32]

3

4   51.    PMI acted with fraudulent intent because it intended to induce

5        consumers to purchase its product by concealing from these consumers

6        the presence of a toxin in a drinking product. PMI's use of lead in

7        Stanley cups is a fact that would be material to the purchase decisions of

8        many of PMI's customers. PMI actively suppressed its use of lead so as

9        to maximize its ability to profit from these consumers, especially its core

10       target demographic of professional women of childbearing age.

11       Reasonable consumers in that demographic are especially likely to be

12       alert to potential safety concerns such as the use of lead in a drinking

13       cup — so PMI deliberately chose not to reveal that manufacturing

14       decision to consumers deciding between Stanley cups and lead-free

15       substitutes. Punitive damages are warranted.

16  52.    Plaintiffs, in reasonable reliance on PMI's misleading representations

17       and nondisclosures, bought Stanley tumbler cups without knowing that

18       they contain lead. Had PMI disclosed its use of lead in the cups,

19       Plaintiffs would not have purchased Stanley cups; rather, they would

20       have opted for a lead-free alternative. PMI knew this to be true for many

21       of its safety-conscious core customers, so it took care not to reveal its

22       practice of using lead while continuing to market its products as safe,

23       pure, and ideal for busy professionals to use at home and elsewhere.

24

25

26

27  ──────────────

28     [32]  *Id.* at 1255.

1      53.    Plaintiffs seek compensatory damages (restitution of their purchase

2             price) and punitive damages, together with prejudgment interest, costs,

3             and attorneys' fees.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THIRD CAUSE OF ACTION: VIOLATION OF BUS. & PROF. CODE § 17200 ET SEQ. (UNFAIR COMPETITION LAW)**

54.   Each preceding paragraph is realleged and incorporated here by reference.

55.   The allegations above describe several unlawful, unfair, or deceptive business practices that violate California's Unfair Competition Law ("UCL"). If PMI is entitled to prevail on the false advertising claim, the same conduct giving rise to that cause of action also constitutes an unlawful business practice.

56.   A violation of California's Bus. & Prof. Code § 17200 may be alleged by "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition."[33]

57.   PMI's unfair, unlawful, or deceptive business practices include, without limitation:

•   Marketing products to children and mothers when the products contain lead;

•   Failing to disclose that PMI's products contain lead; and

•   Marketing products as safe and conducive to a healthy lifestyle.

58.   Plaintiffs and the putative class have paid PMI over $70 million in product sales, and they seek restitution of these amounts. Plaintiffs also ask the Court to enter a permanent injunction requiring PMI to disclose

---

[33]   Bus. & Prof. Code § 17204.

1    the use of lead in its products to all consumers at the point of sale.

2    Plaintiffs also seek prejudgment interest, costs, and attorney fees.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

FOURTH CAUSE OF ACTION: UNJUST ENRICHMENT

2

59.     Each preceding paragraph is realleged and incorporated here by

3

reference.

4

5

60.     PMI has been unjustly enriched by selling Plaintiffs a product Plaintiffs

6

reasonably believed was made of stainless steel and that, unbeknownst

7

to Plaintiffs, contained lead. PMI, as the manufacturer and seller as well

8

as the architect of the Stanley marketing campaign, was in a position to

9

know of its use of lead, while Plaintiffs had no way to know or reason to

10

suspect that the cups used lead. PMI was unjustly enriched because it

11

induced consumers to buy its lead-containing cups through deceitful

12

marketing, as described above.

13

61.     In California, "[a]n individual is required to make restitution if he or she

14

is unjustly enriched at the expense of another."[34]

15

16

62.     Accordingly, Plaintiff seeks restitution of all amounts that Plaintiffs

17

have paid to PMI for Stanley-branded products. This amount will be

18

proved at trial but is believed to exceed $70 million across the putative

19

class of California consumers who unknowingly bought Stanley cups

20

containing undisclosed lead. Plaintiffs also seek prejudgment interest,

21

costs, and attorney fees.

22

23

24

25

26

27

_____

28

[34]   *First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657, 1662 (1992).

REQUEST FOR RELIEF

63.    Plaintiffs request the following relief:

- A permanent injunction ordering PMI to clearly disclose its use of lead in all consumer drinking products at the point of sale and on the packaging of each product;

- Compensatory damages exceeding $70 million to refund all amounts paid by members of the putative class for Stanley cups containing lead;

- Punitive damages to hold PMI accountable for its deliberate concealment of its use of lead and deter similar misconduct;

- Prejudgment interest;

- Attorneys' fees;

- Costs of suit; and

- Any other relief the Court finds appropriate.

1      Respectfully submitted,

2

3

4

5               John Mayfield Rushing                Ryan McCarl

6                 (SBN # 331273)                   (SBN # 302206)

7

8                             Davit Avagyan (SBN #336350)

9                          Elisabeth Nations (SBN #352493)

10                            **Rushing McCarl LLP**

11           2219 Main St. No. 144 | Santa Monica, CA 90405

12          T: (310) 896-5082 | E: stanley@rushingmccarl.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ex. A

*Putative Class Action Complaint*